## Case No. 14,328.

In re ULRICH et al.

[6 Ben. 483;[1] 8 N. B. R. 15.]

District Court, S. D. New York. May, 1873.

**JURISDICTION — INJUNCTION ON PETITION BEFORE APPOINTMENT OF ASSIGNEE.**

In proceedings in involuntary bankruptcy, on a petition by creditors after an adjudication in bankruptcy, an injunction was issued restraining certain creditors from interfering with the property of the bankrupts. This injunction was served on S., one of the creditors, before an assignee was chosen. Afterwards proceedings were taken to punish S. for contempt, in violating that injunction, which resulted in an adjudication that he was guilty of contempt. He then applied to the court to vacate the injunction, on the ground that the court had no jurisdiction to grant the injunction on a petition. *Held*, that the court had jurisdiction to make the injunction which it issued, and that the motion must be denied.

[Cited in Re Duncan, Case No. 4,131; Re Irving, Id. 7,073; Re Oregon Iron Works, Id. 10,562; Re Sims, Id. 12,888; Re Litchfield, 13 Fed. 866.]

[In the matter of Isaac Ulrich and others, bankrupts. For former report, see Case No. 14,327.]

Roger A. Pryor, for the motion.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Anthony R. Dyett, opposed.

BLATCHFORD, District Judge. On the 27th of March, 1869, in a proceeding in this court, in involuntary bankruptcy, against these bankrupts, they were adjudged such. On the 3d of April, 1869, the creditors on whose petition the adjudication took place presented a petition to this court, setting forth the fact of such adjudication, and representing that the greater part of the property of the bankrupts consisted of merchandise in the state of Illinois; that said property, or some of it, was in the possession of one Kaufman, to whom the bankrupts made a fraudulent assignment in January, 1869; that, since said assignment was made, H. B. Claflin & Co., of the city of New York, and Steiner & Brother, of the same place, had caused attachments to be put on said property, on their claims as creditors of said bankrupts; and that suits were still pending in Illinois, in favor of H. B. Claflin & Co., and of Steiner & Brother, against said bankrupts, in connection with said attachments. The petition prayed, that an order be made by this court, restraining Kaufman from making any disposition of any of said goods under said assignment, and from any proceedings under said assignment, and also enjoining H. B. Claflin & Co. and Steiner & Brother from taking any further proceedings in their said actions, until the question of the discharge of the bankrupts should be determined, and for such further or other order in the premises as the court should deem meet. On such petition, this court, on the 3d of April, 1869, made an order directing that Kaufman refrain from taking any further proceedings under the assignment to him, and from selling or disposing of any of the property assigned to him, except such as was exempt from the operation of the bankruptcy act [of 1867 (14 Stat. 517)] and further ordering that all proceedings in certain actions commenced by H. B. Claflin & Co. and by Steiner & Brother, in the state of Illinois, against said bankrupts and wherein said assigned property, or a part thereof, had been attached, be stayed "so far as regards proceedings against said property, or any part thereof, except such thereof as is exempt from the operation of the bankruptcy act," and enjoining and restraining Kaufman, and his agents and attorneys, from further proceedings "as aforesaid" under said assignment, and restraining and enjoining H. B. Claflin & Co. and Steiner & Brother, and their agents and attorneys, from further proceedings "as aforesaid" in said actions, until the further order of this court.

No assignee in bankruptcy was appointed until the 6th of May, 1869. On the 5th of April, 1869, the injunction order was personally served on Michael Steiner, one of the firm of Steiner & Brother, within this district. In October, 1870, attachment proceedings, in the name of the United States, on behalf of the assignee in bankruptcy, as relator, were commenced in this court, against Michael Steiner, to punish him for an alleged contempt of this court, in violating the injunction against Steiner & Brother, contained in said order, by proceeding, after the service of such injunction upon him, with the sale of the property attached in the suit brought by Steiner & Brother, mentioned in the injunction order. An attachment against Michael Steiner was issued by this court, and, after protracted proceedings thereunder, an order was made by this court on the 29th of March, 1873, adjudging him guilty of the contempt charged against him. See U. S. v. Bancroft [Case No. 14,513]. He now applies to this court, on behalf of himself and of Steiner & Brother, to vacate, annul and set aside said injunction order, on the ground that it was irregular and erroneous, and that this court did not have jurisdiction to grant it.

It is contended, on the part of Steiner, that this court, as a court of bankruptcy, had no jurisdiction to enjoin Steiner & Brother in the terms contained in the injunction order, on the application of a creditor of the bankrupts, made after adjudication, by a petition, in the exercise of the summary jurisdiction conferred by the 1st section of the bankruptcy act, or in the exercise of any power of granting injunctions conferred by the 21st section, or by the 40th section of the act; and that an injunction, in such terms, against Steiner & Brother, could be granted only in a formal suit in equity, on bill filed, under the jurisdiction conferred by the 2d section of the act.

It is apparent that the petition for the injunction proceeded, as regarded Steiner & Brother, on the idea that they could be enjoined, under the 21st section of the act, from proceeding further with their suit against the bankrupts, to collect their debt, until the question of the discharge of the bankrupts should have been determined by this court. Such is the prayer of the petition, as respects Steiner & Brother. But the court, in granting the injunction, restrained Steiner & Brother only from further proceeding against the property which, in the suit against the bankrupts, they had attached as the property of the bankrupts.

The question of the jurisdiction of this court to make the injunction order in question, so far as it restrained H. B. Claflin & Co. and Steiner & Brother, was raised in the contempt proceedings, which proceedings were taken against a member of the firm of H. B. Claflin & Co. as well as against Michael Steiner. In its decision in those proceedings, this court said: "The creditors' petition for adjudication was filed on the 18th of March, 1869. The order of adjudication was entered on the 27th of March, 1869. The attachments were levied in January and February, 1869. They were, therefore, dissolved by the bankruptcy proceedings. Having authority, by virtue of the adjudication, to issue a

warrant to its messenger to take possession of all the estate of the bankrupts, and, among other property, of the property so attached as the property of the bankrupts, and to which the firms of the respondents made no claim except by virtue of the dissolved attachments, this court necessarily had the incidental and ancillary authority to enjoin these respondents, and their firms, from further proceeding against the attached property in the suits such firms had brought. The authority is derivable from the power given by the 1st section of the bankruptcy act, to collect and dispose of the assets, as well as from the power given to the court by the judiciary act, to issue all writs necessary for the exercise of its jurisdiction. This injunction was issued on a special petition to that effect, presented by the petitioning creditors after adjudication, and before the appointment of an assignee, and the court, having jurisdiction of the res, had authority to issue an injunction to restrain interference with such res."

The same question thus disposed of is now raised directly in the bankruptcy proceedings. It is contended that the power to stay proceedings, given by the 21st section of the act, is limited to a stay to be made on the application of the bankrupt, and that the injunction provided for by the 40th section of the act, in involuntary cases, is an injunction which cannot operate, in any event, beyond the time of adjudication, and that there is no other power given to the district court, by the act, to grant injunctions, except in a formal suit in equity brought by the assignee in bankruptcy, under the 2d section of the act. In other words, it is maintained, that, as the 40th section applies only to involuntary cases, and as the 21st section provides only for an application by the bankrupt to stay proceedings, so that he may be afforded an opportunity to obtain his discharge in order to be able to plead it in bar of all proceedings to collect the creditor's debt, this court is utterly without power, in voluntary cases, as well as in involuntary cases, after adjudication, and before an assignee is appointed, to restrain interference with the acknowledged property of the bankrupt, in the custody of the court. The doctrine must go to that extent. In involuntary cases, on adjudication, there is a warrant to the marshal to take possession of all the estate of the bankrupt; but, in a voluntary case, there is no warrant of seizure. There may be no person claiming an adverse interest touching the property; or, if there is, and the claim, as in the present case, is one founded solely on an attachment by mesne process, it ceases, by operation of law, through the ipso facto dissolution of the attachment, the moment the assignee obtains the assignment which alone can authorize him to bring a suit, under the 2d section of the act, against any person claiming an adverse interest touching any property covered by the assignment. Therefore, at least in a volun-

tary case, the court is, according to the doctrine advanced, powerless, between the time of adjudication and the time the assignee receives his assignment, to restrain any person from interfering with admitted property of the bankrupt, in its custody, unless the bankrupt himself can be moved to apply for such interference. This is not the law. Congress has not confided to the bankruptcy court the important trust of administering the property of adjudged bankrupts, and yet left it without the necessary means of maintaining its authority and jurisdiction in respect of such property. It has the unquestioned power of punishing for contempt those who interfere with property of a bankrupt in its custody. If so, it must have the subsidiary power of restraining persons, by injunction, from interfering with such property, and then punishing them for contempt, if they violate such injunction. These powers have both of them been exercised by many of the bankruptcy courts, and the right to exercise them has been upheld, on full consideration.

By the 1st section of the act, the bankruptcy court has power and jurisdiction, as a part of the proceeding in bankruptcy, to collect all the assets of the bankrupt, and to ascertain and liquidate the liens and other specific claims on such assets, and to duly distribute such assets among all the creditors. In the present case, Steiner & Brother, by attaching, as the property of the bankrupts, the property which they did attach, in the suit they brought against the bankrupts, to collect their claim, as creditors of the bankrupts, admitted such property to be assets of the bankrupts, and were, by their attachment, seeking to enforce a lien and a specific claim on such assets. This court had a right to collect such assets, to take possession of such property as assets, and to ascertain whether such lien and specific claim existed and should be admitted. Hence, it follows, logically and inevitably, that this court had a right to prevent, by injunction, the claimants of such lien, and all other persons, from proceeding against the specific property and assets attached, and from interfering with or disposing of the same, under and by virtue of the lien claimed. Otherwise, if the assets attached should be disposed of under the lien, and in the suit in which they were attached, there would be no such assets for this court to collect, and no lien or specific claim thereon for this court to ascertain, and no power in this court to distribute such assets, either by awarding them to the claimant of the lien, or dividing them among creditors generally.

In the case of In re Schnepf [Case No. 12,-471], in the district court for the Eastern district of New York, Judge Benedict recognizes the power of granting an injunction as included in the other powers conferred on the court by the 1st section of the act, in a case where a voluntary bankrupt obtained, after adjudication, an injunction from the bankruptcy court restraining judgment cred-

itors from enforcing a levy under execution against his property.

In the case of In re Wallace [Case No. 17,-094], in the district court in Oregon, Judge Deady, in a well-considered opinion, takes the same view, in a case where the bankrupt, after adjudication, obtained an injunction to restrain some of his judgment creditors from selling his property on execution.

In the case of In re Vogel [Cases Nos. 16,-982 and 16.983], in this court, after the filing of a voluntary petition by a bankrupt, some persons took some of his property by replevin proceedings. This court made an order that they deliver up the property to the assignees, or pay its value, within a time limited, and that, in default thereof, attachments issue against them for contempt. The order was made on the petition of the assignees. The jurisdiction of the court to administer the property was conferred upon it by the 1st section of the act, in the clauses before referred to, and its power to punish for contempt those who interfered with such property, while in its custody, was regarded as an incident of its jurisdiction to administer the property so in its custody. The order of this court was affirmed by Mr. Justice Nelson, in the circuit court, on review. On this principle, Steiner and Bancroft might have been punished for contempt, if there had been no injunction, for interfering with the admitted property of the bankrupts, by selling it after adjudication. If so, there can be no well founded objection to the power of the court to give them warning in advance, so that they may refrain from committing such contempt. At least, they ought not to be heard, after they have committed the contempt of selling the property, to object that the court gave them warning beforehand.

In the case of In re Mallory [Case No. 8,-991], in the district court for Nevada. Judge Hillyer, in an opinion reviewing all the cases on the subject, sustained the power of the district court to grant an injunction which a voluntary bankrupt applied for, after adjudication, to restrain a sheriff from selling property of the bankrupts, levied on under an execution on a judgment obtained before the commencement of the proceedings in bankruptcy. The power is referred by the court, in its opinion, to the jurisdiction given by the 1st section of the act, as delegating, at the same time, by necessary implication, the power to administer such remedies, known to the law, as are absolutely indispensable to the complete exercise of the jurisdiction expressly conferred, and as giving the right, in collecting the assets, to employ the proper legal process for effecting the result. The report of this case shows that, in a review of the decision of the district court, the circuit court (Mr. Justice Field) affirmed it, stating that he concurred in both the reasoning and the conclusion of the district judge, and that that opinion presented the law in a clear and satisfactory manner.

In the case of In re Clark [Id. 2,801] the district court for Vermont, in the exercise of its summary jurisdiction under the 1st section of the act, and on the petition of the assignee in bankruptcy, enjoined a creditor of the bankrupt's from further prosecuting, in a state court, a suit against the bankrupt, in which the creditor was seeking to establish a lien on the bankrupt's property. The case being brought before the circuit court, it was contended, by the creditor, that the district court had no power to proceed summarily in the case. Judge Woodruff, in his decision, upholds the power of the district court, under the 1st section of the act, to assume the entire administration of the estate of the debtor, to determine all questions touching the existence of liens thereon, to ascertain and settle the amount of such liens, and to make provision for the liquidation and settlement thereof, and, as incidental to this, to restrain a claimant of such lien from proceeding elsewhere to enforce his lien. He also holds that such power may be summarily exercised, without a formal suit; and that, although, in some cases, the assignee may be unable to secure all the relief he needs without a formal suit, yet, when the property affected by a lien is confessedly the property of the bankrupt, and has passed to the assignee, and it only remains to ascertain and liquidate the alleged lien, the summary jurisdiction of the district court is entirely adequate.

There can be no sound reason whatever given for permitting the assignee, after his appointment, or the bankrupt, after adjudication, and before the appointment of an assignee, to procure from the court an injunction of the character indicated, which should induce a denial of the power to grant such an injunction, after adjudication, and before the appointment of an assignee, on the application of any creditor, much less of the petitioning creditor, who has, by the fact of an adjudication, a debt established by the record. There is no assignee, the bankrupt is not supposed to be looking especially after the interests of his creditors, and he may be in collusion with the creditor who ought to be enjoined, and it is eminently proper that the equitable power of the court should be set in motion by the petitioning creditor, or even by any creditor, either in a voluntary case or in an involuntary case, the action of the court being for the benefit of the creditors generally.

It is urged that the views of the supreme court in the case of Smith v. Mason, 14 Wall. [81 U. S.] 419, are opposed to the jurisdiction I have maintained. But I do not so understand that case. In the present case, the petition on which the injunction was granted prayed for no adjudication as to the rights or claims of Steiner & Brother, and the time had not arrived when any formal suit could, under the 2d section of the act, be brought, because no assignee was in existence to bring any such suit. All that is determined by the

case of Smith v. Mason [supra] is, that a district court, sitting in bankruptcy, in the exercise of the summary jurisdiction conferred by the 1st section of the act, cannot proceed, on the petition of an assignee in bankruptcy, to determine a right of property, as between such assignee and a person who claims the absolute title to, and dominion over, a fund, the absolute title to which such assignee also claims, and that, if such assignee wishes to divest such person of the possession of such fund, he must do it by a formal suit, under the 2d section of the act.

The motion to vacate the injunction order is denied.